In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3847

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

AARON SCHREIBER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cr-00719-1 — **Andrea R. Wood**, *Judge.*

ARGUED MAY 23, 2017 — DECIDED AUGUST 7, 2017

Before BAUER, EASTERBROOK, and RIPPLE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In April 2011, the police arrested Aaron Schreiber for robbing a liquor store in Summit, Illinois. After a state grand jury indicted him for the liquor store robbery, a DNA buccal swab was taken from Mr. Schreiber. That DNA sample later linked him to a 2010 bank robbery, and federal authorities then charged him with that crime.

Prior to his federal bank robbery trial, Mr. Schreiber moved to suppress the DNA evidence. He contended that the state authorities had lacked probable cause to arrest him for the 2011 liquor store robbery and that the buccal swab was the fruit of that illegal arrest. The district court denied the motion to exclude the evidence, and Mr. Schreiber was convicted of bank robbery.

Mr. Schreiber now appeals that conviction and argues that the district court erred in admitting the DNA evidence and, at the very least, erred in failing to hold an evidentiary hearing on his motion to suppress. We now conclude that the district court correctly held that police may take a buccal swab after an arrest supported by probable cause and that a grand jury's issuance of an indictment is conclusive on the question of probable cause. Moreover, because Mr. Schreiber did not come forward with any disputed material facts, the district court did not abuse its discretion in refusing to conduct an evidentiary hearing.

# I

# BACKGROUND

## A.

On December 20, 2010, the Archer Bank in Summit, Illinois, was robbed. In their subsequent investigation, the police recovered several items discarded by the bank robber, including a black stocking, gloves, a pair of Nike tennis shoes, and a red sweatshirt. DNA samples were retrieved from the recovered items and entered into the state's DNA indexing system; the crime, however, remained unsolved.

On April 16, 2011, Officer Armando Dominguez of the Summit Police Department observed a black Chevrolet Suburban driving slowly near a liquor store. He attempted to run the license plate and prepared to initiate a traffic stop, but was called to the scene of another incident prior to doing so. Shortly thereafter, at approximately 7:03 p.m., the Liquor Stop in Summit was robbed. Witnesses described the robber as a black male wearing a white hooded sweatshirt who, after robbing the store, fired a round from his handgun and fled in a black Chevrolet Suburban. Upon learning these details and reviewing security camera footage, Officer Dominguez radioed local authorities with the license plate of the Suburban that he had seen earlier.

At approximately 7:38 p.m., Officer Dominguez received notification that officers with the Blue Island Police Department had stopped a black Suburban, which was carrying three passengers, including Mr. Schreiber. Officer Dominguez drove to the scene, peered through a window, and saw a white hooded sweatshirt on the back seat and loose cash on the floor of the vehicle. Officer Dominguez arrested the occupants of the car, and, one month later, a state grand jury indicted Mr. Schreiber for armed robbery of the liquor store and related crimes. After the indictment and while Mr. Schreiber was awaiting trial, state officials collected a DNA sample by way of a buccal swab.[1] The results of the sample were entered into Illinois's DNA indexing system.

---

[1] A buccal swab consists of "applying a cotton swab or filter paper … to the inside of [the] cheeks." *Maryland v. King*, 133 S. Ct. 1958, 1965 (2013).

The DNA sample ultimately linked Mr. Schreiber to the 2010 bank robbery, and, on December 11, 2014, a federal grand jury indicted Mr. Schreiber for that crime.[2]

Meanwhile, Mr. Schreiber's state proceedings continued. Prior to trial on the state charges, Mr. Schreiber filed a motion to suppress evidence and to quash arrest/dismiss charges on the ground that the police lacked probable cause to arrest him for the liquor store robbery.[3] On February 6, 2015, after an evidentiary hearing, the state court granted Mr. Schreiber's motion, ruling that the police may have had reasonable suspicion to stop the vehicle in which Mr. Schreiber was a passenger, but, based on the evidence presented, they had not connected Mr. Schreiber to the liquor store robbery. The state charges were dismissed.

## B.

After this victory in state court, Mr. Schreiber, now defending against the bank robbery charges in federal court, moved to suppress the DNA evidence recovered through the buccal swab. In support of his motion, he first argued that the state court's determination that there was no probable cause to arrest Mr. Schreiber precluded a contrary ruling by the federal district court. Alternatively, he argued that the taking of the buccal swab was unconstitutional because the police

---

[2] Because Mr. Schreiber was charged with bank robbery in violation of 18 U.S.C. § 2113(a), the district court had jurisdiction pursuant to 18 U.S.C. § 3231. Our jurisdiction is premised on 28 U.S.C. § 1291.

[3] R.34 at 115.

lacked sufficient evidence to arrest and to detain him after the initial investigatory stop by the Blue Island police.

The district court initially denied the motion to suppress, but then ordered additional briefing. Later, after hearing oral argument, the district court again denied the motion. The court rejected Mr. Schreiber's contention that the state court's determination precluded a redetermination by the federal court. The district court noted that the state court's judgment was unclear, but then held that, because the Government had not been a party to the state court proceeding, it was not bound by the state court's judgment. The district court then went on to uphold the taking of the DNA sample from Mr. Schreiber. It held that taking buccal swabs is permissible as part of a booking procedure following an arrest supported by probable cause. The grand jury indictment was, moreover, conclusive on the question of probable cause. The court further noted that, "[j]ust as a law enforcement officer may rely in good faith on the finding of probable cause inherent in a facially valid search warrant, a law enforcement officer may rely in good faith on a grand jury's indictment to conduct a search."[4] The court accordingly concluded that "[t]he state official who swabbed Schreiber's cheek was entitled to rely on the fact of Schreiber's indictment to swab him for DNA, and the United States was entitled to rely on the fact of the state grand jury indictment in choosing to use that evidence for its own prosecution."[5]

---

[4] R.52 at 5 (citations omitted).

[5] *Id*.

Following a bench trial, the district court found Mr. Schreiber guilty of bank robbery and sentenced him to eighty-four months' imprisonment.

## II

## DISCUSSION

### A.

Mr. Schreiber now asks that we review the district court's ruling. In his view, the district court should have suppressed the DNA evidence under the "fruit of the poisonous tree" doctrine because it was the result of the allegedly illegal 2011 arrest for the liquor store robbery.

We cannot accept this contention.[6] It is foreclosed by the Supreme Court's decisions in *Maryland v. King*, 133 S. Ct. 1958 (2013), and *Kaley v. United States*, 134 S. Ct. 1090 (2014). In *King*, the defendant was arrested, charged with assault, and processed for detention. In accordance with state law, booking personnel took a buccal sample from the defendant and uploaded it to the state's DNA database. Shortly thereafter, investigators in an unsolved rape case matched DNA evidence to that sample. In the subsequent rape prosecution, the state appellate court held that taking the sample had violated the defendant's Fourth Amendment rights. The Supreme Court reversed. It held that

---

[6] "In reviewing the district court's denial of a motion to suppress, we review questions of law *de novo* and factual findings for clear error." *United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011).

> [i]n light of the context of a valid arrest sup-
> ported by probable cause respondent's expecta-
> tions of privacy were not offended by the minor
> intrusion of a brief swab of his cheeks. By con-
> trast, that same context of arrest gives rise to sig-
> nificant state interests in identifying respondent
> not only so that the proper name can be attached
> to his charges but also so that the criminal jus-
> tice system can make informed decisions con-
> cerning pretrial custody. … When officers make
> an arrest supported by probable cause to hold
> for a serious offense and they bring the suspect
> to the station to be detained in custody, taking
> and analyzing a cheek swab of the arrestee's
> DNA is, like fingerprinting and photographing,
> a legitimate police booking procedure that is
> reasonable under the Fourth Amendment.

*King*, 133 S. Ct. at 1980.

The manner of collecting Mr. Schreiber's DNA sample was identical to the procedure employed in King;[7] authorities

---

[7] At oral argument, Mr. Schreiber's counsel argued that, in *King*, the sample was taken at the time the defendant was booked, whereas the buccal sample was taken from Mr. Schreiber after he had been in custody for several months. Even if Mr. Schreiber had made this argument in a timely fashion, *see United States v. Conley*, 291 F.3d 464, 468 n.3 (7th Cir. 2002) (declining to consider arguments not presented to the district court nor raised in the briefs on appeal), it is a nonstarter. In *King*, the Court noted that the state's interests in the buccal sample—knowing the defendant's complete history to protect prison employees, fellow inmates, and the public and, possibly, freeing wrongly imprisoned persons—continues throughout the defendant's detention. *See King*, 133 S. Ct. at 1971–75. Consequently, as

used a buccal swab to take a DNA sample and then submitted it to a state DNA directory. The only remaining question, therefore, is whether Mr. Schreiber's detention was supported by probable cause when authorities took the sample.

The state grand jury indictment, which occurred prior to the procurement of the sample, established definitively the requisite probable cause. *See Kaley*, 134 S. Ct. at 1097. In *Kaley*, a grand jury previously had indicted the defendants for re-selling stolen medical devices and for laundering the proceeds. The Government then obtained a restraining order under 21 U.S.C. § 853(e)(1), which froze the defendants' forfeitable assets. The defendants challenged the restraining order on the ground that the Government had proceeded with the forfeiture even though it lacked probable cause to believe that they had committed the offenses permitting forfeiture. The Supreme Court held, however, that "[a]n indictment fair upon its face, and returned by a properly constituted grand jury, … *conclusively determines the existence of probable cause* to believe the defendant perpetrated the offense alleged." *Kaley*, 134 S. Ct. at 1097 (emphasis added) (internal quotation marks omitted). The defendants could not challenge the grand jury's determination of probable cause, reasoned the Court, because "[a] defendant has no right to judicial review of a grand jury's determination of probable cause," and because the defendants, "in contesting the seizure of their property," sought "only to relitigate such a grand jury finding." *Id*. at 1100.

Here, the state grand jury determination plays the same role as it did in *Kaley.* It conclusively determined that there

---

long as the swab occurs after a probable cause determination, the timing is otherwise irrelevant.

was probable cause to believe that Mr. Schreiber robbed the liquor store. His motion to suppress evidence seeks to relitigate this conclusion, the precise approach foreclosed by *Kaley*.[8] The district court, therefore, did not err in denying Mr. Schreiber's motion to suppress the DNA evidence.[9]

---

[8] Mr. Schreiber maintains that the Supreme Court's recent decision in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), alters this reasoning. He notes that, in a footnote, the Court suggests that grand jury determinations of probable cause, reached as a result of tainted evidence, cannot "expunge" a Fourth Amendment violation. *Id*. at 920 n.8. We do not read *Manuel* as effecting a *sub silentio* overruling of both *Kaley v. United States*, 134 S. Ct. 1090 (2014), and *United States v. Calandra*, 414 U.S. 338 (1974), which held that the exclusionary rule does not apply to *grand jury* deliberations. *See id*. at 349–52; *see also United States v. Greve*, 490 F.3d 566, 571 (7th Cir. 2007). Notably, there is no allegation here of fabricated evidence or that the grand jury indictment was otherwise invalid.

Mr. Schreiber notes that *Calandra* states that "[t]he incentive to disregard the requirement of the Fourth Amendment solely to obtain an indictment from a grand jury is substantially negated by the inadmissibility of the illegally seized evidence in a subsequent criminal prosecution of the search victim." 414 U.S. at 351. Although bereft of explanation, Mr. Schreiber may be arguing that the rationale of *Calandra* does not apply here because prosecutors will have an incentive to disregard the Fourth Amendment in grand jury proceedings in order to obtain a buccal swab from defendants, which may then tie defendants to other crimes. If so, this argument is, under the circumstances here, too speculative to be persuasive. There is no evidence in this record of any collusion between state and federal authorities to obtain the DNA sample in order to tie Mr. Schreiber to the bank robbery investigation.

[9] Although unnecessary to our decision today, we note in passing that we are uncertain as to how the state court reached its conclusion that probable cause to arrest Mr. Schreiber was lacking. In particular, it is clear that Mr. Schreiber was found in a car matching the description of the getaway vehicle, with money and an article of clothing matching that of the thief

We accordingly hold that the district court did not err in declining to exclude the DNA evidence.

## B.

Mr. Schreiber further argues that, "[a]t the very least, the district court should have held an evidentiary hearing to ascertain whether the arrest … was unconstitutional in the opinion of the district court."[10]

We cannot accept this contention. It is well established that "[e]videntiary hearings are not required as a matter of course." *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007). Rather, "a district court need conduct a hearing only 'when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion.'" *Id.* (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004)). "We review the denial of an evidentiary hearing on a motion to suppress for abuse of discretion." *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011).

Here, the denial of Mr. Schreiber's motion to suppress proceeds as a matter of law from the Court's decisions in *King* and

---

clearly visible (a white hooded sweatshirt). Admittedly, Mr. Schreiber is white, whereas the thief was described as black. Nonetheless, this racial difference does not appear to negate the possibility that Mr. Schreiber was otherwise involved in the crime. We note that the time between the crime and seizure of the Suburban, when police found Mr. Schreiber in the back seat of the car amidst loose cash and clothing worn during the robbery, was approximately thirty-five minutes.

[10] Appellant's Br. 17.

*Kaley*. *King* establishes that a buccal swab taken by state authorities after a determination of probable cause does not violate the Fourth Amendment. 133 S. Ct. at 1980. *Kaley* holds that a grand jury indictment conclusively establishes probable cause. 134 S. Ct. at 1097. Mr. Schreiber does not dispute any of the facts that bear on the application of *King* or *Kaley*: the nature of the DNA sample (buccal swab), the timing of the buccal swab (after the grand jury indictment), or the regularity of the grand jury proceedings. Because Mr. Schreiber has not come forward with disputed material facts that alter the suppression analysis, the district court did not abuse its discretion in failing to hold an evidentiary hearing.

### Conclusion

For the foregoing reasons, we conclude that the district court did not err in declining to exclude the DNA evidence, nor did it abuse its discretion in failing to hold an evidentiary hearing.

AFFIRMED