RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0077p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-5708

CHARLES HENRY ICKES,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 1:15-cr-00004-2—Greg N. Stivers, Chief District Judge.

Decided and Filed:  April 25, 2019

Before:  CLAY, GILMAN, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:**  David Goin, HARRISON & GOIN LAW FIRM, Scottsville, Kentucky, for Appellant.  Monica Wheatley, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge.  Charles Henry Ickes was convicted by a jury of multiple drug crimes, including a conspiracy to possess methamphetamine with the intent to distribute the drug.  He challenges the district court's denial of his motion to suppress evidence and the court's refusal to conduct an evidentiary hearing.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

A United States Postal Inspector had probable cause to believe that a package being shipped from California to Kentucky contained drugs. The inspector obtained a search warrant for the package and examined its contents. After discovering that the package contained approximately 1.5 pounds of crystal methamphetamine, the Postal Inspector and other law-enforcement agencies conducted a controlled delivery of the package and arrested the recipient. The recipient then agreed to serve as a confidential informant, identified Ickes as the source of the methamphetamine, and provided additional evidence that correlated with Ickes's address in California. With this information, federal law-enforcement officers obtained a warrant to arrest Ickes.

Because of a prior drug-related conviction, Ickes was subject to state-court-ordered probation. His probation conditions included the following provision:

> Defendant shall submit to search and seizure of his/her person, place of residence or area under his/her control, or vehicle, by any probation officer or peace officer, during the day or night, with or without his/her consent, with or without a search warrant, and without regard to probable cause.

Law-enforcement officers arrested Ickes when he arrived at a scheduled appointment with his probation officer. Later that day, the officers and Ickes's probation officer conducted a warrantless search of Ickes's residence and vehicle. They obtained evidence, including United States Postal Service labels and tracking information, that was used against Ickes at trial.

Ickes moved to suppress the evidence obtained from his residence and vehicle, arguing that the search was unconstitutional. The district court denied Ickes's motion without an evidentiary hearing. Ickes was then convicted by a jury, after which the court sentenced him to 280 months of imprisonment. In this appeal, Ickes argues that (1) the court should have suppressed the evidence obtained from the search, and (2) the court should have held an evidentiary hearing regarding his motion to suppress.

# II.  ANALYSIS

## A.  Standard of review

### 1.  Motion to suppress evidence

When a defendant appeals the denial of a motion to suppress evidence, we review the district court's findings of fact under the clear-error standard and we review its conclusions of law de novo.  *United States v. Quinney*, 583 F.3d 891, 893 (6th Cir. 2009).  All evidence is reviewed in the light most favorable to the government.  *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009).

### 2.  Evidentiary hearing

We review a district court's decision not to hold an evidentiary hearing on a motion to suppress under the abuse-of-discretion standard.  *United States v. Schreiber*, 866 F.3d 776, 782 (7th Cir. 2017).  "An evidentiary hearing is required only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question."  *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (emphasis and quotation marks omitted).  Accordingly, a defendant is not entitled to an evidentiary hearing if his argument is "entirely legal in nature."  *Id.*

## B.  Motion to suppress evidence

Ickes claims that law-enforcement officers conducted an illegal search of his residence and vehicle.  First, he claims that the "stalking horse" caveat prevents law-enforcement officers from evading the Fourth Amendment's warrant requirement by bringing a state probation officer to the search.  Second, Ickes argues that his arrest terminated the probation officer's right to search his residence and vehicle.

### 1.  The "stalking horse" caveat

The Fourth Amendment bars unreasonable searches and seizures by the government.  U.S. Const. amend. IV.  And "[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'"  *Griffin v. Wisconsin*, 483 U.S.

868, 873 (1987). But the usual Fourth Amendment analysis is different for individuals subject to probation. *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007). Two Supreme Court cases, *Griffin* and *United States v. Knights*, 534 U.S. 112 (2001), delineate the scope of a probationer's rights under the Fourth Amendment.

In *Griffin*, a probation officer conducted a warrantless search of the probationer's home based on the "reasonable grounds" that the probationer possessed contraband. *Griffin*, 483 U.S. at 870–71. The Supreme Court upheld the search, concluding that the supervision of probationers constituted a "special need" that justified a comparatively greater intrusion on individual privacy. *Id.* at 875. After *Griffin*, some courts concluded that this "special needs" exception did not permit a probation officer to act as a "stalking horse" to help the police evade the Fourth Amendment's warrant requirement. *See, e.g.*, *United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994). They concluded that probation officers could cooperate with police to achieve joint objectives, but probation officers could not use their authority to eliminate the warrant requirement for police investigations. *See, e.g.*, *United States v. Harper*, 928 F.2d 894, 897 (9th Cir. 1991), *overruled by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (per curiam).

The Supreme Court subsequently ruled in *Knights* that the police can search a probationer's residence when the probationer is subject to a search provision and the police have a reasonable suspicion that the probationer is engaging in illegal activity. *Knights*, 534 U.S. at 121. In *Knights*, the individual's probation order contained a search provision that allowed law-enforcement officers to search his "person, property, place of residence, vehicle, or personal effects" in the absence of a search warrant, arrest warrant, or reasonable cause. *Id.* at 114. The Court held that the search was reasonable under the "totality of the circumstances." *Id.* at 118. But it did not invoke the "special needs" exception discussed in *Griffin*. Rather, the Court explained that the probationer had a reduced expectation of privacy and that the government had a strong interest in monitoring probationers. *Id.* at 121. Because the police had a reasonable suspicion that the probationer was engaging in illegal activity and the probationer was subject to a search provision, the search was deemed constitutional. *Id.*

Several courts have suggested that *Knights* eliminated the "stalking horse" caveat to the "special needs" exception. *See, e.g.*, *United States v. Williams*, 417 F.3d 373, 378 (3d Cir. 2005); *United States v. Brown*, 346 F.3d 808, 810–12 (8th Cir. 2003); *United States v. Stokes*, 292 F.3d 964, 967–68 (9th Cir. 2002). Other courts have rejected the "stalking horse" caveat on different grounds. *See, e.g.*, *United States v. Reyes*, 283 F.3d 446, 463–65 (2d Cir. 2002) (concluding that probation officers were not acting as "stalking horses" for unrelated law-enforcement investigations because "the objectives and duties of probation officers and law enforcement personnel are unavoidably parallel and are frequently intertwined"). And this court, citing *Knights*, has concluded that a police officer's warrantless search of a probationer's computer and external hard drive was constitutional because the probationer was subject to a search provision and the search was supported by reasonable suspicion that the probationer had violated a condition of his probation. *Herndon*, 501 F.3d at 688–92. In addition, this court held in *United States v. Sweeney*, 891 F.3d 232 (6th Cir. 2018), that the "stalking horse" caveat does not apply when a *parolee* is subject to a search provision and the search is reasonable under the totality of the circumstances. *Id.* at 237. We note, however, that "parolees have fewer expectations of privacy than probationers" and the Fourth Amendment analysis is not the same for these two groups. *See Samson v. California*, 547 U.S. 843, 850 (2006); *see also United States v. King*, 687 F.3d 1189 (9th Cir. 2012).

All this being said, we conclude that the "stalking horse" caveat, if it survives *Knights* at all, does not apply when a probationer is subject to a valid search provision and law-enforcement officers have a reasonable suspicion that the probationer is engaging in illegal activity. In this case, Ickes was subject to state-ordered probation that included a search provision and the law-enforcement officers had a reasonable suspicion that Ickes was conspiring to distribute methamphetamine. For the duration of Ickes's probation, he had diminished privacy interests and the government had a comparatively substantial interest in monitoring Ickes's activities, so the police needed no more than a reasonable suspicion to search his residence and vehicle. *See Knights*, 534 U.S. at 119–21; *Herndon*, 501 F.3d at 691.

### 2. *Post-arrest searches*

This brings us to Ickes's second argument—that federal officials cannot conduct a warrantless search of a probationer's residence and vehicle after the probationer has been arrested. But he cites no authority (and we have found none) that supports his argument. In the analogous situation of a search provision in a parole agreement, several of our sister circuits have concluded that an arrest does not immediately terminate the right of law-enforcement officers to conduct a warrantless search. *See e.g.*, *United States v. Trujillo*, 404 F.3d 1238, 1242–44 (10th Cir. 2005) (holding that the police did not violate the Fourth Amendment by conducting a warrantless post-arrest search of the parolee's residence on the same day as his arrest); *United States v. Jones*, 152 F.3d 680, 685–86 (7th Cir. 1998) ("[W]e do not believe that the State's special supervisory need is diminished when a parolee is in its custody, or that the parolee enjoys a heightened expectation of privacy in his home due to his custodial status."); *United States v. Hill*, 967 F.2d 902, 910 (3d Cir. 1992) (concluding that a warrantless search of a parolee's business one day after his arrest and incarceration did not violate the Fourth Amendment).

On this issue, we see no reason to distinguish between a parolee and a probationer. The government maintains an interest in supervising both and in protecting society from illegal activity. This court, moreover, has previously upheld a probation officer's post-arrest search of a probationer's residence in the case of *United States v. Martin*, 25 F.3d 293 (6th Cir. 1994), even though the probationer in that case did not argue that her arrest affected the search's constitutionality. *Id.* at 296. We now expressly conclude that a probationer's arrest does not immediately terminate the ability of law-enforcement officers to conduct an otherwise constitutional search. The law-enforcement officers therefore did not violate Ickes's constitutional rights by searching his residence and vehicle after arresting him.

## C. Evidentiary hearing

We finally reach Ickes's argument that the district court erred by not holding an evidentiary hearing on his motion to suppress. He does not dispute, however, any of the facts relating to the search. Because Ickes's argument is "entirely legal in nature," an evidentiary hearing was unnecessary. *See United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006).

And, as discussed in the prior sections, clear precedent establishes that the search of Ickes's residence and vehicle was legally proper.  We therefore find no error in the court's decision to forgo an evidentiary hearing.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.