NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0279n.06

No. 21-6001

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 13, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| LAVONE GANITHUS DIXON, JR., | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

Before: GIBBONS, ROGERS, and MURPHY, Circuit Judges.

ROGERS, Circuit Judge. This case concerns the validity of a search warrant issued by a state court to search defendant Lavone Dixon, Jr.'s residence. The search of the residence led to Dixon's indictment on drug and firearm charges. The district court denied Dixon's motion to suppress the evidence recovered during that search, and Dixon was convicted and sentenced to 312 months' imprisonment. Dixon brought this appeal arguing that the search warrant was invalid because it had not been filed in a court before it was executed, and that in any event Dixon had presented sufficient evidence requiring a hearing on whether the search warrant existed at the time his residence was searched. The district court properly rejected both arguments.

**I.**

On Sunday, September 22, 2019, state law-enforcement officers executed a search warrant on Dixon's residence, where officers discovered four firearms, some ammunition, and three digital scales. As a result of that search, a federal grand jury indicted Dixon in January 2020 on charges

of drug trafficking and being a felon in possession of a firearm. Dixon moved to suppress the evidence seized during the search and requested an evidentiary hearing, arguing that law enforcement did not obtain a warrant to search his residence until after the search had already been conducted. Dixon asserted that the search warrant produced by the Government was not authentic and may have been created as late as June 2020, months after the search.

The district court referred Dixon's motion to the magistrate judge. The magistrate judge first concluded that the standard in *Franks v. Delaware*, 438 U.S. 154 (1978)—which establishes the burden to justify an evidentiary hearing concerning the falsity of statements in search-warrant affidavits—logically applied to Dixon's motion because Dixon claimed that the search warrant itself was fraudulently created. Applying the *Franks* standard to Dixon's request for an evidentiary hearing, the magistrate judge concluded that Dixon's motion did not make a sufficient offer of proof for his allegations that the search warrant had been fraudulently created. As a result, the magistrate judge recommended denying Dixon's request for an evidentiary hearing and denying Dixon's motion to suppress.

Dixon filed three objections to the magistrate judge's report and recommendation: (1) the magistrate judge incorrectly concluded that the *Franks* standard applied to Dixon's case; (2) Dixon was entitled to a hearing under *Franks* anyway because he presented a certification from the Madison County Clerk stating that there was no search warrant in Dixon's state-court file 20-F-139, and Dixon submitted metadata that purportedly indicated that the search of Dixon's residence took place on September 21, 2019, which was the day before the search warrant was signed; and (3) Dixon objected "generally to the extent necessary to preserve his right to appeal any denial of his motion to suppress and the denial of his request for an evidentiary hearing."

The district court first rejected Dixon's argument concerning the *Franks* standard because Dixon did not explain the objection, and in any event because the district court agreed that *Franks* logically applied to Dixon's request for an evidentiary hearing. The district court next rejected Dixon's argument that he was entitled to an evidentiary hearing. The district court considered the metadata and concluded that the metadata did not suggest that the search took place on September 21, 2019, the day before the search warrant was signed by a judge. Rather, the district court agreed with the Government's explanation that the metadata suggested that the video recorder was last charged on September 21, 2019. Further, the court pointed out that the district-court record contained file-stamped copies of both the search-warrant affidavit and the search warrant, and the record also contained the search-warrant return. Finally the district court rejected Dixon's last objection because general objections are "tantamount to a complete failure to object." In light of this information, the district court overruled each of Dixon's objections and adopted the magistrate judge's recommendation to deny Dixon's motion to suppress and his request for an evidentiary hearing. Following his conviction and sentencing, Dixon timely appealed.

## II.

**A. Dixon's argument that the search warrant was not filed before it was executed.**

On appeal, Dixon argues that the search of his residence on Sunday, September 22, 2019, was warrantless because the search warrant—though signed by a state-court judge on September 22, 2019—was not filed in the state-court record until Monday, September 23, 2019. However, Dixon forfeited this argument because he did not raise it in his objections to the magistrate judge's recommendation, and the district court therefore never considered it. We have consistently refused to consider arguments raised for the first time on appeal "when a defendant does 'not raise [those] argument[s] in his objections to the magistrate's report and recommendation.'" *Berkshire v. Dahl*,

928 F.3d 520, 530 (6th Cir. 2019) (quoting *Kensu v. Haigh*, 87 F.3d 172, 176 (6th Cir. 1996)); *see also Peoples v. Hoover*, 377 F. App'x 461, 462–63 (6th Cir. 2010).

Dixon acknowledges that he did not raise this argument in his objections below but contends that he can raise "on appeal any relevant arguments demonstrating that the search of his residence was warrantless." In support, Dixon points to cases where "a *prevailing* party may assert, on appeal, any grounds in support of the judgment." *See* Reply br. at 8 (emphasis added) (citing cases such as *Dandridge v. Williams*, 397 U.S. 471, 475 n.6 (1970)). To be sure, we may affirm a district court on alternative grounds because of the longstanding principle that "[w]here the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action." *J.E. Riley Inv. Co. v. Comm'r*, 311 U.S. 55, 59 (1940) (citation omitted). That principle is inapplicable here, however, because Dixon is seeking to reverse the district court based on a non-jurisdictional argument that the court was never asked to consider.

In any event, Dixon's argument is entirely without merit. Even assuming that the failure to file a search warrant before executing the warrant violated state law—a dubious proposition itself—Dixon cites no case for the proposition that the execution of a search warrant before it is filed violates Fourth Amendment rights. Dixon's proposed rule also runs counter to logic: the Government would be able to execute a warrant only when obtained during business hours, and that rule would necessarily inhibit the Government's ability to act quickly to prevent the potential destruction of evidence. Moreover, a violation of the Fourth Amendment that would require the suppression of evidence is judged by federal constitutional standards. *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016). As our sister circuit has explained, "[e]vidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution simply because the underlying search warrant failed to conform to state law." *United States v.*

*Dishman*, 377 F.3d 809, 811 (8th Cir. 2004). Accordingly, Dixon's claim fails because he cannot show that the failure to file the search warrant in the state court before executing the warrant would violate the Fourth Amendment.

Dixon also asserts for the first time in his reply brief that the search warrant was invalid because it contained a judge's signature but not the seal of the court. The Government did not have the opportunity to respond to that argument, and we consistently decline to entertain arguments raised for the first time in a reply brief. *Bard v. Brown County*, 970 F.3d 738, 751 (6th Cir. 2020). Accordingly, Dixon has forfeited that argument.

## B. Dixon's argument that no search warrant was yet in existence at the time of the search.

Dixon next asserts that he was entitled to an evidentiary hearing on whether the search warrant actually existed before officers searched Dixon's residence. The Government does not argue that the search would have been permissible under the Fourth Amendment even if the search warrant did not exist by the time of the search, but instead contends that the officers obtained a warrant before searching Dixon's residence. We review the denial of a request for an evidentiary hearing for abuse of discretion. *United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005). Dixon does not show that there was a question of fact about the existence of the search warrant at the time of the search. The district court therefore did not abuse its discretion in denying Dixon's request for an evidentiary hearing.

Dixon first reasserts an argument made below that the search warrant was fabricated after the search because no search warrant was filed in the state court. In support, Dixon provided a certification from the Madison County Clerk that Dixon's state-court file did not contain a search warrant on June 11, 2020, nearly nine months after the search. As the district court explained, however, the Government provided, in its response to the motion to suppress, copies of the search-

warrant affidavit and the search warrant. Both bear a file stamp, including the Madison County Clerk's name, indicating that the two documents were filed on September 23, 2019. "An evidentiary hearing is required only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 557 (6th Cir. 2006)). Because the search warrant bears a stamp that it was in fact filed, the absence of the warrant in Dixon's state-court file in particular does not create a contested question of fact about whether the search warrant was filed at all. The district court therefore did not abuse its discretion in denying Dixon an evidentiary hearing on that basis.

Dixon's briefing on appeal refers to two more bases upon which he argues the district court should have concluded that the search warrant was fabricated after the search of Dixon's residence. Dixon presented these arguments to the magistrate judge, and after the magistrate judge recommended denying Dixon's motion to suppress, Dixon did not raise these arguments in his objections to the report and recommendation. Arguments not raised as objections to the magistrate judge's report and recommendation are forfeited, *Berkshire*, 928 F.3d at 530, and we need not consider them on appeal.

In any event, neither of Dixon's arguments is persuasive. First, Dixon asserts that the Government did not mention the search warrant and affidavit in initial discovery, that the Government failed to produce the documents for 250 days, and that the search warrant and affidavit that were initially produced by the Government did not include a file stamp. While the Government may have failed to promptly disclose the copies of the state-court search warrant and affidavit that were file stamped, the Government subsequently corrected these mistakes by

providing the file-stamped documents. The delay does not suggest that the documents were fabricated or that the documents did not exist at the time of the search.

Second, Dixon asserts that the documents were a cut-and-paste job because the search-warrant affidavit contains X's instead of the standard checkmarks that would be populated by filling out the affidavit template form, and the search warrant had different fonts for the description of the affiant than the date and name of the court. While Dixon has pointed to typeface inconsistencies in the preparation of the search warrant and affidavit, these inconsistencies themselves do not suggest that the search warrant was made months after the search. In light of the fact that the documents bear the file stamp of the Madison County Clerk, dated the Monday following the search, Dixon's identified inconsistencies do not create a contested question of fact about whether the search warrant existed at the time of the search.

Dixon also asserts for the first time in his reply brief that one of the Government's exhibits, a chain-of-custody document, suggests that Dixon's firearm was seized before the affidavit was signed, and the search warrant therefore must not have existed before officers searched Dixon's residence. Because we consistently decline to entertain arguments raised for the first time in a reply brief, *Bard*, 970 F.3d at 751, Dixon has forfeited that argument.

In reaching the conclusion that the district court did not abuse its discretion in denying Dixon an evidentiary hearing, we do not rely on the district court's application of the *Franks* standard to Dixon's claim. Because Dixon was not entitled to an evidentiary hearing even under the less-demanding traditional standard restated in *Ickes*, 922 F.3d at 710, we need not address whether the district court correctly concluded that *Franks* should apply to Dixon's claim.

Dixon next contends that his federal criminal proceedings suffered from structural error because the state search warrant was not filed in the federal-district-court record. This argument

was not made in the district court. In any event, as the Government points out, this argument is meritless because the search warrant was included as an exhibit to both Dixon's own motion to suppress and to the Government's response.

Finally, Dixon also raised several arguments pro se. However, we decline to address these pro se arguments because Dixon is represented by counsel on this appeal. We have consistently declined to review pro se arguments in cases where the defendant is already represented by counsel, *United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011); *United States v. Montgomery*, 592 F. App'x 411, 415–16 (6th Cir. 2014).

**III.**

For the foregoing reasons, we affirm the district court's judgment.