RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee*,

> No. 24-3055

*v.*

JAAVAID ALAN MCCARLEY-CONNIN,

> *Defendant-Appellant*.

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:21-cr-00374-1—James G. Carr, District Judge.

Decided and Filed: August 22, 2025

Before: MOORE and NALBANDIAN, Circuit Judges[*]

───────────────

## COUNSEL

**ON BRIEF:** Krysten E. Beech, FEDERAL PUBLIC DEFENDER'S OFFICE, Toledo, Ohio, for Appellant. Joseph H. Walsh, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge. Two suspicious packages, two weeks apart, passed through the Cleveland Postal Service distribution center in early 2021. United States postal inspectors flagged both for a possible connection to drug trafficking. After more research that added to their suspicion, inspectors called for a canine sniff of the packages. The dog, Ciga,

───────────────

[*]During the pendency of this appeal, the Hon. Richard F. Suhrheinrich, a member of the original panel, retired. Judge Moore and Judge Nalbandian act as a quorum pursuant to 28 U.S.C. § 46(d).

alerted to both.  Based on this evidence, a Postal Inspector applied for search warrants to open the packages and both revealed evidence of illicit activity.

The investigation that followed led to the arrest and indictment of Jaavaid McCarley-Connin for his role in a drug-trafficking conspiracy.  He moved to suppress the evidence from the package searches.  He claimed he was entitled to an evidentiary hearing and extrinsic evidence to undermine Ciga's reliability.  The district court denied the motions, so McCarley-Connin pleaded guilty but reserved his right to challenge the trial court's ruling on the suppression motion.  Now, he presses on us the same theory that the district court denied below.  First, he claims that *Florida v. Harris*, 568 U.S. 237 (2013) entitles him to an evidentiary hearing because he offered extrinsic evidence undermining Ciga's reliability.  And second, he claims that even without a hearing, *Harris* required the court to consider his extrinsic evidence;  if he had, the court would have found the affidavit lacked probable cause.  Because *Harris* does not reach as far as McCarley-Connin suggests, we AFFIRM the district court.

**I.**

On February 8, 2021, a package was shipped through the Cleveland United States Postal Service distribution center.  It was addressed to Adrian Garcia in South Gate, California, from a D. McCarley at a Tiffin Street address in Fostoria, Ohio.  The package raised postal inspectors' suspicions.  The cross-country trajectory was the first red flag.  Then there was the package's size and weight—less than four pounds.  And the postage—about $70—was paid in cash.  The sender had also declined a signature at delivery, a tactic commonly used by those mailing narcotics or their proceeds.  So Postal Inspector Brandon Holestine ran the names Adrian Garcia and D. McCarley through Clear—an electronic database that matches names, addresses, and phone numbers—and he couldn't match either individual to the addresses listed on the package.

At that point, Holestine had worked with the USPS for four years and was assigned to a DEA drug interdiction task force.  Based on his experience and training in these roles, he was familiar with how drug dealers use the postal service to ship their product and proceeds across the country.  And given this knowledge and experience, the red flags suggested to Holestine that the package could contain illicit goods.  So he requested a drug-detection canine to take a sniff.

The next day, Detective Michael Twombly of the Cuyahoga County Sheriff's Office placed the suspect package in a line-up for his certified canine, Ciga, to investigate.[1] Ciga alerted to the package, prompting Holestine to apply for a search warrant based on his suspicions and Ciga's alert. With the search warrant in hand, he opened the package and discovered $19,660 in currency obscured in magazines and a bubble mailer, but no drugs.

Later, Holestine reviewed internal postal records and found another package headed to, instead of from, the same Tiffin Street address. Only this time, it was addressed to Lilly Roberts, and its return addressee was Brandon Garcia in Lynwood, California. It bore many of the same suspicious features from the first package. First was its trajectory—again Ohio and California. Then its size—about six pounds. And again, its postage fee—about $90—was paid in cash and the sender again declined a signature on delivery. Holestine looked up the sender and recipient names in Clear and neither was affiliated with the addresses on the package.

So when postal inspectors interdicted the package on February 24, they again asked Detective Twombly and Ciga to investigate. And Ciga again alerted. Based on his suspicions and Ciga's alert, Holestine applied for and received another search warrant for this second package. This time, he discovered over 1,000 grams of white powder inside a plastic bag, wrapped in duct tape, and hidden in a bag of dog food. Lab tests later identified the powder as fentanyl.

On March 24, officers conducted a sting at the Tiffin Street address. An undercover officer delivered a package near the front door with one kilogram of sham narcotics and noticed a male, later identified as Jaavaid McCarley-Connin, peering outside. A few minutes later, Rebecca Roberts picked up the package and carried it inside. About ten minutes after that,

---

[1] According to the search warrant affidavit, Detective Twombly was a state-certified Narcotics Canine handler and had been paired with Ciga since 2013. The two were most recently certified in November 2020 by the Ohio Peace Officers Training Academy and in December 2020 by the North American Police Work Dog Association. NAPWDA is a nationally organized police-work-dog association. To that point, the two had also completed 80 hours of a state-certified training program under a certified trainer from the NAPWDA at Shallow Creek Kennels. Ciga's credentials extend to alerts for marijuana, cocaine, heroin, MDEA (methlyenedioxyethlamphamine), methamphetamine (crystal meth), and their derivatives. Since a dog recognizes *odors* rather than physical items, *Harris*, 568 U.S. at 246 n.2, Ciga can still alert when drugs are not present if there are lingering scents.

Roberts got in one car with a bag, while McCarley-Connin got in another. Officers followed and arrested them both.

The officers had also received a warrant to search the Tiffin Street house. Inside, they found $3,500, three firearms, ammunition, and several cell phones. McCarley-Connin was indicted on three counts for violating federal drug laws, and one count for being a felon in possession of a firearm.

McCarley-Connin requested an evidentiary hearing and moved to suppress the evidence that resulted from the canine sniffs of the two packages. In his view, under *Harris*, 568 U.S. 237, because a sniff was the basis of probable cause, he was entitled to an evidentiary hearing because he had presented extrinsic evidence undermining the dog's reliability. For the same reason, he argued that the warrant was not supported by probable cause and so the court should have suppressed the results of the two package searches.

The government countered that *Harris*'s rule applies only to warrantless searches, so did not dictate the outcome. It claimed that to receive a hearing on a canine's reliability attested to in a warrant affidavit, the defendant must make the showing required by *Franks v. Delaware*, 438 U.S. 154 (1978). And the district court agreed. It denied the requested evidentiary hearing because McCarley-Connin had not invoked *Franks*. Because the affidavit had enough evidence to support a finding on Ciga's reliability, the court found the warrant was supported by probable cause. So McCarley-Connin pleaded guilty to all four counts but reserved the right to appeal the trial court's denials of his motions.

The court sentenced McCarley-Connin to a 120-month term of imprisonment followed by five years of supervised release. Now he appeals the denial of both his evidentiary hearing and motion to suppress.

## II.

We review the district court's legal conclusions de novo, and his decision not to hold an evidentiary hearing for an abuse of discretion. *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019). McCarley-Connin renews his arguments from the district court, so this appeal hinges on

his reading of *Harris*.  He again claims that he was entitled to an evidentiary hearing because he contested Ciga's reliability.[2]  He also argues that the district court had an obligation under *Harris* to consider his extrinsic evidence undermining Ciga's reliability.  And if the court had relied on this evidence, he says, it would have found that the warrant was not supported by probable cause.  We disagree on both counts.

## A.

*Harris* does not reach as far as McCarley-Connin suggests; it concerns warrantless searches.  And because McCarley-Connin's motion to suppress comes on the heels of a warrant affidavit, his right to an evidentiary hearing and extrinsic evidence must rest elsewhere, if it exists at all.

## 1.

To explain why, we start with basic Fourth Amendment principles.  The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . .

U.S. Const. amend. IV.  From this text flows the basic principle that an officer may search or seize based only on either a showing of probable cause and a validly issued warrant, or an established exception to the warrant requirement.  *See Arizona v. Gant*, 556 U.S. 332, 338 (2009).

Though officers can execute a "reasonable" search under either a warrant or an exception, we prefer searches with a warrant.  Why?  A warrant requires officers to show probable cause—a flexible inquiry that rests on probabilities.  *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983).  And to get a warrant, officers not only have to gather facts to satisfy this standard but must then present those facts to a "neutral and detached magistrate."  *Id.* at 240 (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)).  In this way the warrant requirement serves a "high function."

---

[2]McCarley-Connin's argument rests on a presumption that, in a warrantless search, *Harris* requires district judges to hold an evidentiary hearing.  We assume for the sake of this appeal that that's true.

*McDonald v. United States*, 335 U.S. 451, 455 (1948); *see also Chimel v. California*, 395 U.S. 752, 758–59 (1969).  The magistrate stands between the citizen and the police, "so that an objective mind might weigh the need" to intrude upon a privacy interest, *McDonald*, 335 U.S. at 455, rather than an "officer engaged in the often competitive enterprise of ferreting out crime," *Gates*, 462 U.S. at 240 (quoting *Johnson*, 333 U.S. at 14).**[3]**

As a result, the warrant affidavit is central to the magistrate's probable-cause finding. Based on its contents—plus any sworn, oral testimony presented to the issuing magistrate—the magistrate can determine whether the officer has presented sufficient, reliable evidence of probable cause.**[4]**  And for this same reason, a district court's and our appellate review are similarly limited to the facts in the affidavit.  *United States v. Hatcher*, 473 F.2d 321, 323–24 (6th Cir. 1973) ("In determining th[e affidavit's] sufficiency we are concerned only with the statements of fact contained in the affidavit."); *United States v. Burrell*, 114 F.4th 537, 550 (6th

---

**[3]**Preferences for warrants over warrant exceptions pervade our doctrine and encourage officers to obtain warrants.  For example, searches "undertaken pursuant to a warrant issued upon a showing of probable cause" are presumptively valid.  *Knox Cnty. Educ. Ass'n v. Knox Cnty. Bd. of Educ.*, 158 F.3d 361, 373 (6th Cir. 1998) ("Except in certain well-defined circumstances, a search or seizure . . . is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." (quoting *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 619 (1989)).  This presumption of reasonableness has a second-order effect of encouraging officers to seek warrants rather than rely on exceptions.  *United States v. Ventresca*, 380 U.S. 102, 106–07 (1965).

Standards for judicial review similarly encourage officers to rely on warrants.  When district and appellate courts review a probable-cause finding, that review is deferential to the magistrate's conclusion.  If a magistrate had a "substantial basis" for his probable-cause finding, the district court will find the Fourth Amendment is satisfied. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).  Even in "doubtful or marginal cases," that deference gives the issuing judge "the benefit of the doubt."  *United States v. Baker*, 976 F.3d 636, 646 (6th Cir. 2020) (quoting *Gates*, 462 U.S. at 237 n.10).  These examples implicitly acknowledge the importance of having a magistrate make the initial probable-cause determination.

**[4]**The key requirement that the Fourth Amendment imposes on a magistrate's grant of a warrant is that the probable cause be supported by "[o]ath or affirmation."  U.S. Const. amend. IV; *Nathanson v. United States*, 290 U.S. 41, 47 (1933) ("Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him *under oath or affirmation*." (emphasis added)).  The warrant affidavit is the primary vehicle for presenting sworn testimony to a magistrate, but officers can supplement their written affidavit with sworn, oral testimony.  *Sparks v. United States*, 90 F.2d 61, 64 (6th Cir. 1937).

The Federal Rules of Criminal Procedure further require—at least when federal officers are involved—that any sworn, oral testimony that a magistrate relies on, be recorded.  Fed. R. Crim. P. 41; *see United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992) (suggesting that by recording oral testimony in compliance with Rule 41, sworn testimony becomes "part of the affidavit").

Cir. 2024). Though we haven't always described our review with the phrase "four corners," the concept inherent to the phrase has permeated the caselaw of federal courts for decades.[5]

If courts reviewed a probable-cause finding by relying on information outside the affidavit, it would eviscerate the "essential purpose of the Fourth Amendment." *Jones v. United States*, 357 U.S. 493, 498 (1958). The magistrate animates the Amendment's purpose by standing between law enforcement and "the citizen," shielding him from "unwarranted intrusions into his privacy." *Id.* So relying on information never seen by the magistrate would render his role irrelevant. In the same vein, the four-corners rule prevents searches and seizures based only on an officer's belief that the fruits of the crime are present in the place to be searched. *See id.* And it eliminates the possibility that an officer could, in hindsight, make a search "legal by what it turns up." *United States v. Di Re*, 332 U.S. 581, 595 (1948). It also prevents an affidavit from being "rehabilitated" by information an officer never disclosed to the magistrate. *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971).

**2.**

The four-corners principle has an exception. A defendant may rebut the presumption for a validly issued warrant by alleging that an affidavit was perjured—*i.e.*, by including in his motion "allegations of deliberate falsehood or of reckless disregard for the truth" in the affidavit. *Franks*, 438 U.S. at 171. *Franks* grants defendants "a limited right to an evidentiary hearing" about the affidavit's veracity. *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). But to get a so-called *Franks* hearing, he must first make a "substantial preliminary showing" that

---

[5]*United States v. Anderson*, 453 F.2d 174, 176–77 (9th Cir. 1971) ("reaffirming th[e] 'four corners' approach" originally described in *Poldo v. United States*, 55 F.2d 866 (9th Cir. 1932) and collecting cases limiting appellate review to only sworn evidence before the magistrate at the time of the probable-cause finding); *Aderhold v. United States*, 132 F.2d 858, 859 (5th Cir. 1943) ("If the facts set out in the affidavit are such that an ordinarily prudent person would be led to believe that there was a commission of the offense charged, the warrant should be issued."); *see Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964), *abrogated on other grounds by Gates*, 462 U.S. 213 ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." (citing *Giordenello v. United States*, 357 U.S. 480, 486 (1958)); *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971) (discussing an arrest warrant, noting that "[u]nder the cases of this Court, an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate"); *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973) ("We, therefore, reaffirm the requirement that all facts and circumstances relied upon for the issuance of a federal warrant be found in the written affidavit." (internal quotation marks omitted)); *United States v. Burrell*, 114 F.4th 537, 550 (6th Cir. 2024) (similar).

specific portions of the affidavit have either material misstatements or omissions. *Franks*, 438 U.S. at 170–72; *Fowler*, 535 F.3d at 415. Only after he makes this showing is a defendant entitled to judicial review of evidence outside the affidavit.

Still, if a defendant challenges the veracity of evidence provided to law enforcement through an informant, the defendant can use *Franks* only to challenge the affiant. So even under *Franks*, an "attack on the veracity" of an informant's statements doesn't satisfy the burden to trigger a *Franks* hearing unless the defendant makes a "substantial showing that the *affiant's* statements were intentionally or recklessly false." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003) (emphasis added); *see also Franks*, 438 U.S. at 171.

The *Franks* exception also relates to the four-corners rule. An affidavit that establishes probable cause based on a lie (or a reckless disregard for the truth) undermines the purpose of a preemptive, objective determination by the magistrate about the adequacy of the officer's evidence. *Franks*, 438 U.S. at 165 ("Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." (citations omitted)); *see also id.* at 168.

At bottom then, after a warrant affidavit has been reviewed and approved by a neutral and detached magistrate, a defendant is *entitled* to a hearing based on evidence outside the four corners of the affidavit only if he makes the preliminary showing under *Franks*.[6]

---

[6]Our view that *Franks* is the primary vehicle for a defendant to avoid four-corners review of a facially sufficient warrant affidavit says nothing about a defendant's ability to challenge certain aspects of the affidavit itself without extrinsic evidence. For example, a defendant can argue that an affidavit's contents are "bare bones" and merely state "suspicions, beliefs, or conclusions," without also offering factual evidence about the affiant's "veracity, reliability, and basis of knowledge." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (first quoting *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996); and then quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). Or he can argue that the affidavit's information was stale. *United States v. Church*, 823 F.3d 351, 356 (6th Cir. 2016) ("Whether an affidavit's information is stale enough to preclude a showing of probable cause depends on the facts alleged in the affidavit."); *see also Sgro v. United States*, 287 U.S. 206, 210–11 (1932). Or that the affidavit lacked the facts necessary to satisfy the probable cause standard from *Gates*. *United States v. Sanders*, 106 F.4th 455, 461–63 (6th Cir.), *cert. denied*, 145 S. Ct. 603 (2024) (collecting examples where an affidavit describes the required "fair probability" of contraband to be found in the place to be searched).

**B.**

Based on these principles, McCarley-Connin's theory fails. *Harris*, which involved a warrantless search, didn't create a new exception to the four-corners rule.

**1.**

*Harris* considered "how a court should determine if the 'alert' of a drug-detection dog during a traffic stop provides probable cause to search a vehicle." 568 U.S. at 240. There, Aldo, a drug-detection dog, was on a routine patrol with his handler when they stopped Harris's truck. Harris was "visibly nervous," so the officer asked to search the car. *Id.* Harris refused, but the officer was undeterred and used Aldo for a "free air sniff." *Id.* Aldo alerted. Relying on this alert, the officer concluded he had probable cause to search the car under the automobile exception to the warrant requirement. His search revealed hundreds of pseudoephedrine pills, matches, and other materials for cooking meth—but none of the drugs that Aldo was trained to detect. *Id.* at 241.

Harris moved to suppress the results of the search, arguing that Aldo's alert did not give probable cause. And at the probable-cause hearing, Harris's attorney focused on cross-examining the officer about Aldo's certification and his field performance. *Id.* at 242. On appeal, the Florida Supreme Court determined that a canine's reliability hinged on the satisfaction of a "strict evidentiary checklist," without which a canine couldn't be considered reliable. *Id.* at 244. But the United State Supreme Court rejected this theory. A "finding of a drug-detection dog's reliability cannot depend on the State's satisfaction of multiple, independent evidentiary requirements. No more for dogs than for human informants is such an inflexible checklist the way to prove reliability, and thus establish probable cause." *Id.* at 245.

Instead, the Court explained that the better measure of a dog's reliability is his performance in a controlled testing environment. *Id.* at 246. So when a "bona fide organization" certifies the dog, his alert presumptively provides probable cause. *Id.* at 246–47. And even if the dog isn't formally certified, if he has "recently and successfully completed a training program that evaluated his proficiency in locating drugs," the dog can still provide probable cause if he alerts. *Id.* at 247.

But the dog's reliability isn't a given. The Court also determined that a defendant "must have an opportunity to challenge" evidence of the dog's reliability, "whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id.* He can challenge a certification or training program in the abstract—like its methods or lax standards. *Id.* Or he can challenge a canine's history of performance in the field, or the circumstances of the specific alert if, for example, the dog was working in unfamiliar conditions. *Id.* Notably though, at no point did the Court suggest that this process would apply outside the context of the case: a warrantless search of a vehicle.

And that's no surprise. A warrantless search involves no warrant affidavit. So any judicial review focuses on the *officer's* determination that he had probable cause to believe evidence of a crime was present, not a *magistrate's*. With no warrant affidavit, the Fourth Amendment's preferred method for conducting searches is no longer feasible. And the only question left is whether the search was reasonable under a warrant exception, and that answer rests on the objective facts. *See United States v. Ross*, 456 U.S. 798, 807–08 (1982). That's why we don't read *Harris* to require an evidentiary hearing for searches pursuant to a warrant, based on a dog sniff; the normal rules governing when a district court should hold an evidentiary hearing remain.

**2.**

So when a dog sniff is the basis of a warrantless search, *Harris* says that the defendant must have a chance to challenge the dog's reliability. But when the dog sniff is the basis of a warrant affidavit, the defendant's recourse is in *Franks*. And in the *Franks* hearing, if the defendant can get one, he can argue that the affidavit's description of the relevant certification or training contains a deliberate or reckless falsehood or omission that would have impacted the magistrate's probable-cause determination. In that case, the defendant is not challenging the dog's credentials per se, even though the dog's credentials are, in some sense, at issue if an officer lies about them.

This distinction in the applicable law hinges on whether a warrant issued. When a magistrate signs off on a warrant, it's on the basis of probable cause that depends, at least

partially, on facts about the dog's training, credentials, and reliability, attested to in the affidavit. But in the *Harris* situation, no neutral and detached magistrate made a preemptive probable-cause determination. So the government bears the burden of showing that the officer's conduct was reasonable under the Fourth Amendment.

This conclusion dovetails with *Harris*'s explanation for how to evaluate a canine's sniff after a warrantless search. Given the fact-dependent nature of warrantless searches and the absence of a warrant affidavit, district courts have—long before *Harris*—regularly held hearings when a defendant contests a canine sniff during a warrantless search. *United States v. Diaz*, 25 F.3d 392, 395–96 (6th Cir. 1994) (warrantless vehicle search) (affirming district court's determination that officer had probable cause to search after evidentiary hearing where officer testified to canine's training, certification, and past false positives, so "sufficiently established the dog's reliability"); *United States v. Hill*, 195 F.3d 258, 273–74 (6th Cir. 1999) (warrantless vehicle search) (similar). This pattern continued after *Harris*.

*Harris* is best read as explaining what makes a drug-detection dog reliable: certification by a bona fide organization. And when it comes to warrantless searches based on dog sniffs, *Harris* explains how the defendant can undermine the canine's reliability. As to both conclusions, *Harris* rejects any rigid, evidentiary checklist to certify a canine. *Harris*, 568 U.S. at 244. Instead, much like every other probable-cause inquiry, whether a canine sniff can support probable cause rests on all the circumstances, like the context of the alert, and the training and credentials of the dog. *See id.* at 246–48.

In sum, *Harris* and *Franks* govern different factual situations: *Harris* after a warrantless search, *Franks* after a warrant affidavit.

**3.**

Finally, McCarley-Connin's reliance on *United States v. Ligon* does not persuade us otherwise. 861 F. App'x 612 (6th Cir. 2021). There, Ciga's alert was again the basis for probable cause in a pair of search warrant affidavits. *Id.* at 620. When Ligon moved to suppress the narcotics that officers found under these warrants, he argued that the affidavits were not supported by probable cause. He focused on the absence of any reference to Ciga's "prior

history, number of arrests, false alerts, etc." *Id.* But he also left uncontested that Ciga was "certified by a bona fide organization." *Id.* at 621. So based on the nature of Ligon's challenge, the trial court presumed Ciga's reliability, and found that the warrant was supported by probable cause—without a hearing. *Id.*

We affirmed. The panel noted that Ligon had "not challenge[d] the canine's underlying reliability, but instead complained about the type of evidence contained in the search warrant." *Id.* McCarley-Connin reads this statement as implying that if Ligon had challenged the canine's underlying reliability, Ligon would have been entitled to a hearing under *Harris*. But that reads too much into the statement.

As even McCarley-Connin notes, *Ligon* had no reason to address *Harris*'s reach. The panel characterized the defendant's challenge to be about the sufficiency of the affidavit, not the veracity of the statements in the affidavit. So *Ligon* doesn't support McCarley-Connin's arguments that *Harris* applies to searches performed under a warrant.

## III.

Thus, we reject McCarley-Connin's argument that *Harris* entitles him to an evidentiary hearing. And unless the *Franks* exception applies, he is neither entitled to an evidentiary hearing, nor able to rely on evidence outside the four corners of the affidavit to undermine its veracity. McCarley-Connin didn't ask for a *Franks* hearing. So we are limited to the four corners of the affidavit to determine whether it was supported by probable cause, and for the same reason, the typical rules governing evidentiary hearings apply.

The only remaining issue is whether the warrant affidavit was supported by probable cause, a legal question. *United States v. Ralston*, 110 F.4th 909, 917 (6th Cir. 2024). So the district court did not abuse its discretion by denying the requested hearing. *See id.*; *Ickes*, 922 F.3d at 710. Because the court correctly limited his review to the four corners of the affidavit, and McCarley-Connin does not offer another reason why the affidavit was insufficient, we AFFIRM the district court's conclusion that probable cause supported the search of both packages.