RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0174p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee*,

    *v.*

GREGORY D. RALSTON,

          *Defendant-Appellant*.

No. 23-3651

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:20-cr-00330-1—John R. Adams, District Judge.

Decided and Filed: August 12, 2024

Before: GILMAN, LARSEN, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:** Travis A. Rossman, ROSSMAN LAW, PLLC, Barbourville, Kentucky, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

RONALD LEE GILMAN, Circuit Judge. After a four-day jury trial, Gregory D. Ralston was found guilty of distributing and possessing with the intent to distribute a fentanyl-containing substance. He was, however, acquitted of causing the serious bodily injury of another by distributing the fentanyl.

Ralston challenges the district court's denial of his motion to suppress evidence without holding an evidentiary hearing, the court's limitation of his cross-examination of two

government witnesses under the Confrontation Clause of the Sixth Amendment, and the procedural and substantive reasonableness of his 180-month sentence. For the reasons set forth below, we **AFFIRM** the judgment of the district court. But because of an intervening amendment in the Sentencing Guidelines during the pendency of this appeal, we **REMAND** the case to the district court for consideration of whether Ralston is entitled to a sentence reduction under 18 U.S.C. § 3582(c).

## I. BACKGROUND

### A. Factual background

On May 14, 2020, Ramon Villegas's niece arrived at her uncle's home in Lorain, Ohio to find him unconscious on the front porch. He had nearly died from a drug overdose after injecting drugs that he had bought the previous day from Ralston. Villegas believed that he had purchased pure heroin, but what he injected was laced with fentanyl. After discovering her uncle's condition, Villegas's niece immediately contacted the police, who dispatched paramedics for assistance. The responding paramedics determined that Villegas was suffering from an opioid overdose and administered three doses of Narcan, a drug used to resuscitate those who have overdosed from opioids. Villegas was transported to a local hospital for further treatment.

Meanwhile, local police were sent to Villegas's home to investigate the circumstances of his overdose. Detective Craig Payne, one of the responding officers, spoke with Villegas's girlfriend and Villegas's niece in an effort to determine who had sold the drugs to Villegas. Villegas's girlfriend gave Payne access to Villegas's cell phone, which contained text messages suggesting that Villegas had purchased $40 worth of drugs from "Roy" the day before. Further investigation revealed that "Roy Ralston" was the likely drug supplier. The police used law-enforcement databases and Facebook to connect the name "Roy Ralston" to Gregory Ralston. Payne then impersonated Villegas and sent a text message to the number associated with Ralston, asking to purchase more narcotics.

Ralston fell for Payne's subterfuge and agreed to meet in the parking lot of a local restaurant to conduct the sale. Payne and other officers arrived at the restaurant, identified Ralston, and arrested him. The officers then searched Ralston and his vehicle, recovering a cell

phone that they confirmed to be the cell phone that Payne had texted. They also recovered and a plastic bag containing 4.7 grams of a tan substance containing fentanyl.

Ralston was taken to the Lorain Police Department after his arrest, and Payne searched the contents of Ralston's cell phone after obtaining a search warrant. Payne recovered text messages between Ralston's cell phone and Villegas's regarding other drug transactions. After signing a waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), Ralston confirmed that he had gone to the restaurant parking lot to sell drugs to Villegas. He was then transported to the Lorain County Jail.

**B. Procedural background**

Ralston was initially indicted for possessing fentanyl with the intent to distribute the drug, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). A Second Superseding Indictment added the count of distributing a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and an enhanced statutory penalty for causing serious bodily injury to another, under 21 U.S.C. § 841(b)(1)(C). The new count required the government to prove beyond a reasonable doubt that (1) Ralston sold fentanyl to Villegas, and (2) that the drug caused Villegas serious bodily injury.

Ralston moved to suppress the evidence recovered from his arrest, including the fentanyl, his cell phone, and the statements that he made to the police. He argued that the police lacked probable cause to arrest him or to search his vehicle. The district court initially granted Ralston's request for an evidentiary hearing on the motion and scheduled it for January 11, 2021. After granting motions to continue the evidentiary hearing and other delays, however, the district court denied Ralston's motion without holding an evidentiary hearing.

Ralston then pleaded not guilty and proceeded to a jury trial. The government called Payne as a witness and questioned him regarding the events of May 14, 2020. Payne testified that, during his investigation, he had interviewed Villegas and had informed him that Villegas would not be charged with drug possession resulting from the overdose. Villegas, according to Payne, had also sold prescription drugs to Ralston.

Payne confirmed during cross-examination that he had elected not to charge Villegas with either possession or trafficking of illicit drugs. Ralston's attorney probed Payne on this point and, when he asked Payne what prior convictions Villegas had, the government objected. The district court sustained the objection and instructed Ralston's attorney to refrain from suggesting that Villegas was given a break for selling drugs while Ralston was not. Instead, the district court suggested that Ralston's attorney could cross-examine Villegas directly regarding Villegas's prior convictions.

The government questioned Payne during redirect, and Payne testified that, without the presence of physical drugs, he was unlikely to pursue charges against someone for drug-trafficking offenses. During a sidebar, the district court also reiterated its reluctance to allow questions regarding why Villegas was not charged with any crime. After Payne's testimony, the court instructed the jury that "[w]hether Mr. Villegas was charged or should have been charged is not an issue for you to decide or to consider. It's not relevant in the case here. The only relevant issue for you to decide is the two charges against the defendant."

The government also called Villegas as a witness. Villegas testified that he bought heroin from Ralston, and that the drugs he bought from Ralston on May 13, 2020 caused his overdose the next day. He maintained, however, that he did not believe that Ralston had intentionally tried to kill him, and that he harbored no animosity toward Ralston.

The May 14, 2020 overdose was not Villegas's first. Instead, he recounted overdosing at least 14 times. Villegas further testified that he had previously sold drugs, had hidden his drug relapse from his family after a long period of sobriety, and had been previously convicted of identity theft, forgery, and theft.

The district court informed the jury during final instructions that they could consider Villegas's prior convictions and other testimony in determining whether to believe his overall testimony. The jury found Ralston guilty on both the possession and distribution charges, but acquitted him of the enhancement for serious bodily injury.

One month before sentencing, the district court entered an order indicating that it was considering a possible upward variance of Ralston's sentence based upon certain sentencing

factors enumerated in 18 U.S.C. § 3553(a).  Pretrial Services calculated Ralston's recommended sentence pursuant to the United States Sentencing Guidelines (the Guidelines).  The resulting Guidelines range was 27 to 33 months of imprisonment.

Neither party objected to the presentence report.  The government, however, argued that a sentence within the Guidelines range was insufficient to satisfy the § 3553(a) factors, and instead asked the district court to impose a sentence greater than the Guidelines range.  Specifically, the government pointed to Ralston's 2018 conviction for corrupting another with drugs, reckless homicide, tampering with evidence, and trafficking in drugs.  That conviction related to a 2017 incident in which Ralston had sold drugs that caused an overdose death.  While the victim was nonresponsive, Ralston and a codefendant loaded her body into a car, dumped her body in the woods, and hid evidence of their involvement.  Ralston was convicted of those offenses in 2018 by a state court and sentenced to two years of imprisonment.  He was released in March 2019, however, and began a three-year period of parole.  The present case arose just 14 months after Ralston's release from prison and while he was still on parole for the 2018 conviction.

At sentencing, the district court recounted the 27-to-33-months Guidelines range while noting that the statutory maximum for the conviction was 240 months.  *See* 21 U.S.C. § 841(b)(1)(C).  The government reiterated that it was seeking an upward variance from the Guidelines range.  Ralston's attorney urged against any upward variance and argued—as he had in his sentencing memorandum—that Ralston's sentence should be based on his acceptance of responsibility as shown by his offer to plead guilty to both counts of the indictment without the enhancement (which offer the government had declined to accept).  After hearing Ralston's allocution, the district court stated its reasoning behind Ralston's sentence.

Although the jury had acquitted Ralston of the enhanced penalty for serious bodily harm, the district court found that the evidence that Ralston had caused Villegas's overdose and serious bodily harm was "overwhelming."  It further highlighted its reluctance to use such acquitted conduct in calculating a sentence, but noted that it was permitted to do so as long as such conduct was proven by a preponderance of the evidence.  The court also pointed out that had Ralston been convicted of the enhancement, his Guidelines range would have been 324 to 405

months of imprisonment. *See* U.S.S.G. § 2D1.1(a)(2) & Ch. 5, Pt. A. Next, the court described Ralston's 2018 conviction and emphasized the need to avoid any further recidivism.

The court then discussed why Ralston's case was not the typical, or "mine-run," case. It highlighted the facts of the 2018 conviction and the callous nature with which it believed that Ralston had acted. A sentence within the Guidelines range, the court determined, would not sufficiently protect the community. Next, the court walked through the § 3553(a) sentencing factors, including the nature and circumstances of the case and Ralston's history and characteristics. The court also noted that there would be a large sentencing disparity between what it was imposing and the Guidelines range, but it justified this large variance based on Ralston's acquitted conduct and his prior convictions. These considerations rendered "this case completely distinct from any other," according to the court. Such a large variance was further warranted, the court determined, because Ralston lacked remorse, remained a danger to the community, and needed to be deterred from repeating the same behavior.

Considering these factors, the district court sentenced Ralston to 180 months of imprisonment. The court then asked the government whether, "under U.S. versus Bostic [*United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004)]," it had "any objections, corrections, [or] any arguments not previously raised" that the court could address. Ralston's attorney was similarly asked: "*Bostic* objections, please, counsel?" Neither party raised any objections.

Shortly after the sentencing hearing, the district court entered a written sentencing memorandum that supplemented its rationale for imposing such a large upward variance. The memorandum primarily set forth why the court found by a preponderance of the evidence that Ralston committed the conduct necessary to impose the enhancement for serious bodily harm, despite having been acquitted of such conduct by the jury. Relying on this acquitted conduct, Ralston's 2018 state-court conviction, and Ralston's danger to the community, the district court reaffirmed the 180-month sentence. The court then entered judgment, and Ralston timely appealed.

## II. ANALYSIS

### A. Standards of review

A district court's decision not to hold an evidentiary hearing on a motion to suppress is reviewed under the abuse-of-discretion standard. *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019). We utilize the same standard to review any limitation placed on the scope of cross-examination, *United States v. Callahan*, 801 F.3d 606, 623 (6th Cir. 2015), and to review the reasonableness of a criminal sentence, *Gall v. United States*, 552 U.S. 38, 51 (2007). Finally, the district court's legal conclusions are reviewed de novo and its factual findings under the clear-error standard. *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022).

### B. The motion to suppress

Ralston's first argument concerns the denial of his motion to suppress. He argues that because he raised contested facts relating to whether the police officers had probable cause to stop and arrest him, the district court abused its discretion in denying his motion without first holding an evidentiary hearing. Ralston further avers that the year-long delay and subsequent failure to hold an evidentiary hearing after initially scheduling one indicates that the court simply forgot to conduct it. Neither argument evidences an abuse of discretion.

An evidentiary hearing is required only if the motion to suppress points to facts that "enable the court to conclude that contested issues of fact going to the validity of the search are in question." *Ickes*, 922 F.3d at 710 (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)). If the defendant's argument is "entirely legal in nature," then he is "not entitled to an evidentiary hearing." *Id.* (quoting *Abboud*, 438 F.3d at 577).

Ralston asserts that, at the time of his arrest, there was no evidence of any traffic violation, no reference to illegal activity in the text messages between his cell phone and Villegas's, and no direct evidence that he had committed any crime. As such, Ralston contends that the district court should have held an evidentiary hearing to clear up these contested issues of fact relevant to whether the police had probable cause to stop and search him. But the district

court concluded that the numerous text messages exchanged between Ralston and Villegas provided sufficient probable cause for the police to arrest Ralston.

Ralston does not dispute the existence of the text messages, but rather whether those text messages were *sufficient* to support a finding of probable cause. Whether the text messages exchanged between Ralston and Villegas were enough to support probable cause is entirely a legal question. *See United States v. Bass*, 785 F.3d 1043, 1048 (6th Cir. 2015) ("A finding of probable cause is a legal conclusion . . . ."). Because Ralston's dispute was entirely legal in nature, we are not convinced that the district court abused its discretion in declining to hold an evidentiary hearing before denying Ralston's motion to suppress. *See Ickes*, 922 F.3d at 710, 713 (finding no abuse of discretion in the district court's decision to not hold an evidentiary hearing before dismissing the defendant's motion to suppress).

Ralston's other argument on this issue—that he was entitled to an evidentiary hearing because the district court forgot to hold the hearing after first scheduling one—also does not warrant reversal. His briefing on this point cites no caselaw that supports finding an abuse of discretion on such a ground. Furthermore, as stated above, unless "fact[s] going to the validity of the search are in question," the district court has discretion to hold an evidentiary hearing or not. *Ickes*, 922 F.3d at 710 (quoting *Abboud*, 438 F.3d at 577). We accordingly find no abuse of discretion in the district court's decision to not hold an evidentiary hearing on Ralston's motion to suppress.

## C. Cross-examination and the Confrontation Clause

Ralston next challenges the district court's decision to limit the scope of permissible inquiry during the cross-examinations of Villegas and Payne—arguing that the district court violated the Confrontation Clause. The Sixth Amendment's Confrontation Clause guarantees a defendant the "opportunity of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) (emphasis omitted)). Importantly, the right is simply "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original)). And "trial

judges retain wide latitude . . . to impose reasonable limits" on cross-examination to avoid harassment, prejudice, confusion of the issues, or repetitive interrogation. *Id.*

Still, a violation of the Confrontation Clause occurs when a defendant is denied the opportunity to cross-examine a witness in an effort to expose a "prototypical form of bias on the part of the witness." *Id.* at 680. "The key issue is whether the jury had enough information to assess the defense's theory of the case despite the limits placed on cross-examination." *United States v. Callahan*, 801 F.3d 606, 624 (6th Cir. 2015) (quoting *United States v. Holden*, 557 F.3d 698, 704 (6th Cir. 2009)). "So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." *United States v. Givhan*, 740 F. App'x 458, 461 (6th Cir. 2018) (quoting *Callahan*, 801 F.3d at 624). A district court's limitation on cross-examination is not improper if, absent the limitation, the jury has "enough information . . . to assess the defense theory of bias or improper motive." *Boggs v. Collins*, 226 F.3d 728, 739 (6th Cir. 2000) (citations omitted).

Ralston argues that the district court's limitation of his cross-examination of both Villegas and Payne violated Ralston's Sixth Amendment rights. The district court, according to Ralston, should have permitted inquiry into whether Villegas avoided charges for selling prescription drugs in exchange for his testimony at Ralston's trial.

But the claim appears to rest on a misreading of the record. At trial, the district court did not allow Ralston to ask Payne whether he considered Villegas a "threat to [the] community" because Ralston was "attempting to draw a comparison or parallel between the fact that [Ralston] was charged and Mr. Villegas [was] not." The court excluded the testimony because it suggested something "untoward" or "some sort of favoritism" toward Villegas, which the court said was inappropriate. It then noted that Ralston would have an opportunity to cross-examine Villegas directly. As Ralston emphasizes, the court said that "as far as trying to raise an inference that Mr. Villegas was given some sort of break by law enforcement, I'm not going to allow that."

Read in isolation, the district court's statement could be seen as excluding core impeachment evidence—whether Villegas's testimony was influenced by preferential treatment.

But the court's ruling was in response to Ralston's question about whether Payne considered Villegas a threat to the community—not a question about whether the government had made any sort of promise to Villegas. Whether Payne thought that Villegas was a threat to the community was not relevant to the question of Villegas's bias. The court never said that Ralston could not ask Villegas himself whether he was promised anything, or was under the impression that he would be treated more favorably, in exchange for his testimony. And Ralston never tried to ask that question.

In other words, the district court did not prevent Ralston from asking Villegas whether his potential criminal liability for possession of drugs contributed to his testimony implicating Ralston. "[B]ecause the district court did not 'curtail cross-examination from which a jury could have assessed a witness's bias, prejudice or motive to testify,'" *see United States v. Givhan*, 740 F. App'x 458, 462 (6th Cir. 2018) (quoting *Boggs*, 226 F.3d at 739 (alteration omitted)), we find no abuse of discretion in the district court's decision to limit the scope of cross-examination regarding the lack of criminal charges as to Villegas.

**D.  The reasonableness of Ralston's sentence**

We now turn to the next issue on appeal—the reasonableness of Ralston's sentence. "A criminal sentence must be both procedurally and substantively reasonable." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). We determine whether a sentence is procedurally reasonable by asking whether "the trial court follow[ed] proper procedures and [gave] adequate consideration to the § 3553(a) factors." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Holguin-Hernandez v. United States*, 589 U.S. 169, 173 (2020)) (cleaned up). Substantive reasonableness looks to "whether the trial court's chosen sentence was 'reasonable' or whether the judge instead 'abused his discretion in determining that the § 3553(a) factors supported' the sentence imposed." *Holguin-Hernandez*, 589 U.S. at 173 (quoting *Gall v. United States*, 552 U.S. 38, 56 (2007)). "In short, procedural review of a sentence concerns the propriety of the factors that go into a sentence; substantive review assesses the reasonableness of the sentence that results." *Perez-Rodriguez*, 960 F.3d at 753.

### 1. *Procedural reasonableness*

Ralston begins his procedural-reasonableness argument by urging that we apply the typical abuse-of-discretion standard to review his challenge.  The government contends that we should instead adopt the more stringent plain-error standard.  Our decision in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), and subsequent relevant caselaw answers the question in favor of the government.

Under *Bostic*, district courts are required to ask the parties during the sentencing hearing whether they have any objections to the sentence that has been imposed.  *Id.* at 872.  If the district court provides such a "meaningful opportunity to object," but a party fails to clearly articulate any objections, then any objections subsequently raised on appeal will be reviewed under the plain-error standard.  *Id.* at 872–73 & n.6; *see also United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc) (reaffirming the *Bostic* rule).  "A district court can satisfy the requirements of the *Bostic* rule only by clearly asking for objections to the sentence that have not been previously raised."  *United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006).

The transcript of the sentencing hearing in the present case reveals that the district court adhered to *Bostic*'s mandate.  After announcing Ralston's 180-month sentence and before adjourning, the court asked the government "under U.S. versus Bostic, any objections, corrections, [or] any arguments not previously raised [that] I can address?"  The government had no objections.  Nor did Ralston's attorney when the court then turned to him to ask:  "Bostic objections, please, counsel?"

Ralston contends that this questioning from the district court did not satisfy *Bostic*'s demands.  True enough, as Ralston observes, this court has found language such as "is there anything else that you need me to address," *United States v. Camacho-Arellano*, 614 F.3d 244, 246–47 (6th Cir. 2010), and "[d]o you have anything further for the record," *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007), to be insufficient.  Although *Bostic* does not require a shibboleth, these questions do not articulate what *Bostic* demands:  "*clearly* asking for *objections* to the sentence."  *Clark*, 469 F.3d at 570 (emphases added).

In the present case, although the district court's more comprehensive *Bostic* question was directed at the government, it asked an abridged version of the same question to Ralston's attorney. And we review such questions in the context of how they are asked. *See United States v. James*, 428 F. App'x 533, 535–36 (6th Cir. 2011). Reading the district court's two *Bostic* questions together, the court was reasonably understood as asking for objections to the sentence. We thus apply the plain-error standard of review to Ralston's challenges to the procedural reasonableness of his sentence.

Under the plain-error standard, Ralston must establish an "(1) error (2) that 'was obvious or clear,' (3) that 'affected [his] substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*, 516 F.3d at 386 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). Relief under this demanding standard is granted only in exceptional circumstances where the "error is so plain" that the district court was "derelict in countenancing" the error. *Id.* (quoting *Gardiner*, 463 F.3d at 459).

### i. Upward variance

The first procedural error claimed by Ralston is the district court's alleged lack of explanation as to why it specifically varied upward by almost 450% from the high-end of Ralston's recommend Guidelines range. He primarily relies on *United States v. Blackie*, 548 F.3d 395 (6th Cir. 2008), and *United States v. Cousins*, 469 F.3d 572 (6th Cir. 2006), *overruled in part on other grounds by Irizarry v. United States*, 553 U.S. 708 (2008), for support.

In *Blackie*, this court determined that the district court had not complied with 18 U.S.C. § 3553(c) by failing to announce the defendant's Guidelines range or why it decided to vary upward from that range. 548 F.3d at 401–03. This failure constituted plain error, and the sentence was vacated. *Id.* at 403–04. And in *Cousins*, the district court likewise failed to announce the applicable Guidelines range or provide any reasoning to support the upward variance. This court, reviewing the sentence for procedural reasonableness, vacated the imposed sentence and remanded the case. 469 F.3d at 576–78, 582.

Unlike the district courts in *Blackie* and *Cousins*, the district court in the present case announced Ralston's Guidelines range and grappled with the § 3553(a) factors. It cited the need

to provide adequate deterrence, the nature and circumstances of the offense, the history and characteristics of Ralston, the potential sentencing disparities, and the need to protect the public. Although the court did not explicitly address each sentencing factor, that failure is not reversibly erroneous because there was "sufficient evidence in the record to affirmatively demonstrate the court's consideration of them." *See United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006).

Procedural reasonableness demands that the district court adequately explain its variance in consultation with § 3553(a). "[W]e do not require that explanation to include the court's rationale for rejecting other possible sentences." *United States v. Potts*, 947 F.3d 357, 371 (6th Cir. 2020). Because the district court explained the reasons for an upward variance and discussed the sentencing factors, it did not plainly err in imposing the 180-month sentence.

### ii. *Enhancement for serious bodily injury*

Ralston next argues that the district court clearly erred in determining that he caused Villegas's overdose and serious bodily injury. The jury acquitted Ralston of this conduct and the associated enhancement. But the district court heavily relied on this acquitted conduct in imposing the above-Guidelines sentence.

Under current caselaw, a district court may base its sentence on acquitted conduct. *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc) (citing *United States v. Watts*, 519 U.S. 148, 151–52 (1997)). The Sentencing Guidelines currently permit this as well. *See* U.S.S.G. §1B1.3. Although a jury must be convinced beyond a reasonable doubt to convict on such conduct, the district court need find a fact only by a preponderance of the evidence for sentencing purposes. *White*, 551 F.3d at 385. Nevertheless, "we must be especially careful when reviewing a district court's determination that a sentencing fact was proven by a preponderance of the evidence in cases in which a jury has found that the prosecution failed to establish that fact beyond a reasonable doubt." *United States v. McReynolds*, 964 F.3d 555, 565–66 (6th Cir. 2020). To do otherwise would contradict the "special weight" and "absolute finality" typically afforded "to a jury's *verdict* of acquittal—no matter how erroneous its

decision." *United States v. DiFrancesco*, 449 U.S. 117, 129-30 (1980) (quoting *Burks v. United States*, 437 U.S. 1, 16 (1978)).

Our caution is justified by two recent developments that are likely to reduce the future use of acquitted conduct in determining a defendant's ultimate sentence. The first is that a growing number of circuit court judges and several Supreme Court Justices have questioned the use of acquitted conduct in a district court's calculation of an appropriate sentence. *See, e.g.*, *McClinton v. United States*, 143 S. Ct. 2400, 2401 (2023) (Sotomayor, J., addressing the denial of certiorari) ("[T]he use of acquitted conduct to increase a defendant's Sentencing Guidelines range and sentence raises important questions that go to the fairness and perceived fairness of the criminal justice system."); *United States v. Cox*, No. 22-3593, 2023 WL 3945176, at *2 (6th Cir. June 12, 2023) (noting the growing criticism of the use of acquitted conduct at sentencing); *United States v. Tapia*, No. 21-1674, 2023 WL 2942922, at *2 n.2 (2d Cir. Apr. 14, 2023) (collecting cases).

Second, the United States Sentencing Commission has promulgated a Guidelines amendment that will become effective on November 1, 2024. The amendment prohibits the use of acquitted conduct for the purpose of calculating the Guidelines range. Amendments to U.S.S.G. §1B1.3, *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202405_Amendments.pdf. But corresponding changes to the policy statement found at §6A1.3 of the Guidelines clarify that sentencing courts remain free to consider acquitted conduct in imposing a sentence in consultation with the 18 U.S.C. § 3553(a) sentencing factors. *Id.* ("[N]othing in the Guidelines Manual abrogates a court's authority under 18 U.S.C. § 3661.") The United States Sentencing Commission highlighted this point in its public meeting where the amendment was adopted, noting that the "amendment precludes consideration of acquitted conduct in the context of *calculating the [G]uidelines*," but that a court may still consider acquitted conduct when "imposing a sentence." Vice Chair Claire Murray, Remarks at United States Sentencing Commission Public Meeting, Apr. 17, 2024, *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20240417/transcript.pdf (emphasis added).

Neither of these developments, however, evidences clear error in the present case. The district court did not use the acquitted conduct to calculate Ralston's Guidelines range. It instead used the acquitted conduct solely in applying an upward variance from that range. The court explained its basis for the upward variance, concluding that the preponderance of the evidence supported the finding that Villegas sustained serious bodily injury as a result of overdosing on drugs supplied by Ralston. Under the applicable standard of review, we must defer to this factual finding unless, "after considering all the evidence, [we are] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Reed*, 72 F.4th 174, 190 (6th Cir. 2023) (quoting *United States v. Sands*, 4 F.4th 417, 420 (6th Cir. 2021)). "[T]he test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one." *Id.* (quoting *Sands*, 4 F.4th at 420).

Record evidence supports the district court's finding. Villegas testified that he purchased the drugs that caused his overdose from Ralston, and text messages are consistent with that account. The paramedics who treated Villegas testified that he needed three times the normal amount of Narcan to be revived and that, but for this treatment, he would have died. Payne testified that during an interview with police after being arrested, Ralston admitted to selling drugs to Villegas the day before Villegas's overdose.

Ralston attempts to rebut this evidence by arguing that Villegas's testimony was not credible, that Villegas's injury was not serious because he testified to at least 14 prior instances of overdosing, and that the jury acquitted Ralston of this conduct. But, as stated above, although the jury needed to be convinced beyond a reasonable doubt that Ralston engaged in this conduct, the district court needed to be convinced only by a preponderance of the evidence. *See McReynolds*, 964 F.3d at 565–66 (discussing the different evidentiary standards). And even if a different court might have agreed with Ralston's argument and declined to vary upward, the clear-error standard requires us to defer to the district court's finding so long as it is "plausible on the record as a whole." *See United States v. Estrada-Gonzalez*, 32 F.4th 607, 614 (6th Cir. 2022). Because the district court's factual finding is supported by record evidence, we decline to reverse it under the clear-error standard of review.

### iii. Acceptance of responsibility

Ralston's final procedural-reasonableness argument is that the district court failed to sufficiently address his argument for a lower sentence given his conditional acceptance of responsibility. He alternatively asserts that even if we conclude that the court adequately addressed this argument, he is nonetheless entitled to a sentence reduction. Although Ralston urged the district court to credit him with acceptance of responsibility, he did not object after the court asked the *Bostic* question. We accordingly apply the plain-error standard of review to his procedural challenge.

The Guidelines permits a two-level decrease in a defendant's offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Ralston argued in the district court that he was entitled to this two-level reduction because he had offered to plead guilty to both counts of the Second Superseding Indictment without the penalty enhancement. The court did not explicitly reference Ralston's argument, but the record reflects that the court considered it and declined to credit Ralston for acceptance of responsibility because "the evidence was . . . overwhelming" that Ralston sold the fentanyl that caused Villegas's overdose and that he lacked remorse for his actions. Although the court could have addressed Ralston's argument more clearly, there was no plain error because the record reflects that the argument was considered and contains the reason for rejecting it. *See United States v. Simmons*, 501 F.3d 620, 625 (6th Cir. 2007). As for Ralston's alternative argument that he is nonetheless entitled to a sentence reduction, the § 3E1.1 reduction "does not apply 'if the defendant contests even one factual element of the offense.'" *United States v. Guerrero*, 76 F.4th 519, 531 (6th Cir. 2023) (quoting *United States v. Trevino*, 7 F.4th 414, 432 (6th Cir. 2021)). And Ralston refused at trial to admit that he knowingly distributed fentanyl as charged. We accordingly conclude that the district court did not plainly err in denying Ralston a two-level reduction for acceptance of responsibility.

### 2. Substantive reasonableness

Even if the sentence is procedurally reasonable, we must also consider whether it is substantively reasonable. *United States v. Ewing*, 832 F. App'x 416, 419 (6th Cir. 2020).

Sentences within the applicable Guidelines range may be considered presumptively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). But we may not assume that a sentence outside of the Guidelines range, whether above or below, is presumptively unreasonable. *Id.* Instead, "even if the district court followed proper procedures and adequately considered the appropriate factors, we ask whether the district court nevertheless imposed a sentence that is 'greater than necessary.'" *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Holguin-Hernandez v. United States*, 589 U.S. 169, 173 (2020)). We "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. A "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." *Id.* at 50.

Ralston argues that his sentence was substantively unreasonable because (1) the district court placed too much emphasis on his 2018 conviction and his acquitted conduct, and (2) the sentence is greater than necessary to achieve the goals enumerated in the § 3553(a) factors. He primarily relies on *United States v. Ewing*, 832 F. App'x 416 (6th Cir. 2020), to support his argument.

In *Ewing*, the defendant was found guilty of knowingly and intentionally distributing a mixture of a substance containing fentanyl, which apparently resulted in the death of another, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). *Id.* at 417. He was sentenced to a mandatory life sentence. *Id.* Ewing appealed his sentence, and this court reversed and remanded. The court concluded that insufficient facts supported the jury finding that the drugs that Ewing had sold caused the victim's death. *Id.* at 417–18.

On remand, the district court determined that Ewing's Guidelines range was 30 to 37 months of imprisonment, but it sentenced him to 180 months. *Id.* at 418. This court vacated Ewing's second sentence as substantively unreasonable because the district court imposed it without sufficient justification. *Id.* at 419–20. At first glance, the facts of *Ewing* appear similar to the facts of this case. There are, however, two critical differences between this case and *Ewing*.

The district court in *Ewing* never determined on remand whether the drugs that the defendant sold actually caused the death of the victim. *Id.* at 420. It also failed to consider any of the § 3553(a) factors other than the seriousness of the offense. *Id.* In the present case, the district court conclusively found that Ralston supplied the drugs that caused Villegas's overdose. It orally supported this conclusion during Ralston's sentencing hearing, and it submitted written findings providing additional rationale. And as noted above, the district court discussed several of the § 3553(a) sentencing factors, including deterrence, the nature and circumstances of the offense, and the history and characteristics of Ralston.

As Ralston points out, the district court also placed great weight on his 2018 conviction. That conviction alone might have been insufficient to warrant such a large upward variance because a defendant's prior convictions are already factored into the Guidelines-range calculation. *See Perez-Rodriguez*, 960 F.3d at 758 (vacating a sentence as substantively unreasonable in part because it was based on prior convictions). And Ralston's 180-month sentence is nearly a 450% upward variance from his Guidelines range. But "district courts have considerable discretion in this area and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them." *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc). With that standard in mind, we conclude that the district court did not abuse its discretion in imposing Ralston's sentence given the reasons provided in its discussion of the § 3553(a) sentencing factors, its rationale for considering Ralston's 2018 conviction, and its finding by a preponderance of the evidence that Ralston sold the fentanyl that caused Villegas's serious bodily injury.

## E. Guidelines Amendment 821

We now turn to Ralston's final issue on appeal—the applicability of an amendment to the Guidelines that became effective after Ralston was sentenced. Amendment 821 changed how "status points" are allotted in calculating a criminal defendant's Guidelines sentence. *See* U.S.S.G. § 4A1.1 amend. 821 (https://www.ussc.gov/guidelines/amendment/821); *see also United States v. Gilbert*, No. 16-20414, 2024 WL 2231631, at *2 (E.D. Mich. May 15, 2024) (discussing Amendment 821). The government acknowledges that Amendment 821 has been given retroactive effect.

When an amendment to the Guidelines applies retroactively, we may "affirm the sentence [and] remand for consideration of whether the prisoner is entitled to a sentence reduction under [18 U.S.C.] § 3582(c)." *United States v. Poole*, 538 F.3d 644, 646 (6th Cir. 2008) (citing *United States v. Ursery*, 109 F.3d 1129, 1137–38 (6th Cir. 1997)). We will take that action here "[f]or purposes of judicial efficiency" and will remand this case to the district court "without the necessity of [Ralston] filing a motion pursuant to 18 U.S.C. § 3582(c)." *See United States v. Jackson*, 678 F.3d 442, 445–46 (6th Cir. 2012).

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court, but we **REMAND** the case to the district court for the purpose of determining whether Amendment 821 entitles Ralston to a sentence reduction.